NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

FILED
October 22, 2019
Carla Bender
4th District Appellate
Court, IL

2019 IL App (4th) 190123-U

NO. 4-19-0123

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| *In re* Estate of RONNA NICOLE YOAKUM, Deceased | ) | Appeal from the |
| | ) | Circuit Court of |
| (Bruce Yoakum and Shannon Lenhart Stephenson, | ) | DeWitt County |
| Petitioners-Appellants, | ) | No. 17P30 |
| v. | ) | |
| Laura Green and Josh Baker, | ) | Honorable |
| Respondents-Appellees). | ) | Gary A. Webber, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Justices Steigmann and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held:*    Appellate court affirmed the trial court's dismissal of petitioners' petition for
relief from judgment.

¶ 2        On November 5, 2018, the trial court dismissed a petition for relief from

judgment filed pursuant to section 2-1401 of the Code of Civil Procedure (Procedure Code) (735

ILCS 5/2-1401 (West 2018) by Shannon Lenhart Stephenson and Bruce Yoakum (petitioners).

Stephenson was the administrator of decedent Ronna Nicole Yoakum's estate, and Bruce

Yoakum was decedent's surviving spouse.  On December 3, 2018, petitioners filed a motion to

reconsider.  On January 23, 2019, the court denied the motion to reconsider.  Petitioners appeal,

arguing the court erred in dismissing their petition for relief from judgment.  We affirm.

¶ 3                                I. BACKGROUND

¶ 4        On June 20, 2017, Yoakum filed a petition for letters of administration after

decedent died without a will on September 20, 2016. The petition (1) noted decedent was survived by Yoakum, who was her husband, and three minor children and (2) asked the trial court to issue letters of administration to Stephenson. On June 26, 2017, the court entered orders issuing letters of administration to Stephenson and naming Yoakum and the three children as decedent's only heirs.

¶ 5 On June 30, 2017, Stephenson filed a petition for the issuance of a citation to discover assets against respondents Laura Green (decedent's mother) and Joshua Baker (decedent's brother). The petition noted decedent was seriously injured in a motorcycle accident on or about April 26, 2016, and received $100,000 for her injuries from an insurance company. Before her death, a portion of the $100,000 was used to purchase a home located at 205 North Alexander Street in Clinton, Illinois, in Baker's name. According to the petition, respondents had knowledge of, or were in wrongful possession of, property belonging to decedent's estate.

¶ 6 On September 1, 2017, Baker sold the residence at 205 North Alexander Street in Clinton. Baker agreed to deposit the proceeds of the sale in an escrow account pending the trial court's resolution of this matter.

¶ 7 On October 17, 2017, respondents filed an answer to the petition for issuance of citations to discover assets. As affirmative defenses, respondents asserted decedent and Baker opened a joint account at PNC Bank in Bloomington, Illinois, on May 31, 2016, and decedent deposited the $100,000 insurance payment into the joint account the same day. The terms of the account gave Baker ownership when decedent died. Respondents also alleged on June 4, 2016, decedent told Baker to take $50,000 from the joint account as a gift from her to him and use the money to purchase the property at 205 North Alexander Street in his name alone. Respondents stated this occurred in the presence of Laura Green, Ruth Johnson, and Eric Holt. On June 7,

2017, Baker withdrew $52,732.65 from the joint account to purchase the home located at 205 N. Alexander Street in Clinton in his name.

¶ 8 On December 18, 2017, Stephenson filed a petition for the issuance of citations to recover assets. The petition noted the opening of the joint account, the $100,000 deposit, and the withdrawal of money to purchase the property in Clinton. The petition also noted that on June 9, 2016, $40,500 was withdrawn from the joint account and deposited in a PNC Bank account owned solely by Baker. On June 17, 2016, the balance in the joint account was $25.93. Thereafter, Baker would periodically transfer money from his account into the joint account.

¶ 9 The petition noted decedent filed a petition for dissolution of marriage on September 6, 2016. The dissolution had not been finalized when decedent died on September 20, 2016. At the time of her death, decedent was living in the home at 205 N. Alexander Street. According to the petition, the purchase of the property at 205 N. Alexander Street, the depletion of the joint account, and the transfer of money from Baker's account to the joint account was evidence respondents were attempting to defraud decedent's surviving spouse and children of their statutory shares of decedent's estate.

¶ 10 On March 13, 2018, Yoakum filed a first amended petition for the issuance of citations to recover assets. Count I of the petition alleged decedent was a disabled person due to an amputation and was further debilitated by chronic alcoholism. The petition also alleged Green was decedent's representative payee for decedent's supplemental security income of $700 per month. According to the petition, respondents stood in positions of trust and confidence with decedent because of their familial relationships. Further, respondents obtained control over decedent's property through deception and then failed to provide enough money to decedent to meet her basic needs. Count II of the petition alleged respondents persuaded decedent to defraud

Yoakum of his marital rights by depositing decedent's insurance proceeds into a joint account with Baker. According to the petition, decedent intended to retain ownership of the funds after depositing the money in the joint account, and decedent and Baker had an understanding decedent would continue to receive money from the insurance proceeds to pay for her needs. Petitioners also alleged based on information and belief that decedent later believed respondents tricked her into giving them control of her finances.

¶ 11          On March 26, 2018, respondents filed a motion for summary judgment with regard to the petition for citations to discover assets, asserting the following facts were undisputed: (1) on May 31, 2016, decedent and Baker went to PNC Bank, signed a joint account agreement, and $100,000 was deposited in the joint account; (2) on June 7, 2016, $52,732.68 was withdrawn from the joint account to purchase property located at 205 North Alexander Street in Clinton in Baker's name; (3) on June 9, 2016, $40,500 was withdrawn from the joint account and deposited into an account owned by Baker alone; (4) after June 17, 2016, Baker transferred various amounts of money from his individual PNC account to the joint bank account; and (5) on September 1, 2017, the property at 205 North Alexander Street was sold for $58,012.19. Respondents attached affidavits from Baker, Green, and Ruth Johnson to the motion, stating decedent told Baker she wanted him to use money from the joint account to buy a home in his name alone as her gift to him.

¶ 12          Respondents argued that when money is deposited in a joint bank account it is presumed the individual making the deposit intends to make a gift to individuals sharing the account. As a result, according to respondents, the estate had to provide clear and convincing evidence decedent did not intend to gift to Baker the money she deposited in the joint account. Respondents asked the trial court to grant them judgment as a matter of law and authorize the

release of the funds from the sale of the home to Baker. On April 25, 2018, petitioners responded to the motion for summary judgment, arguing an issue of material fact existed as to whether the deposit of decedent's insurance proceeds into the joint bank account was a valid *inter vivos* gift or a sham transfer.

¶ 13 On June 13, 2018, the trial court heard arguments on the motion for summary judgment. Respondents pointed out petitioners did not dispute the affidavits respondents included with the motion for summary judgment and argued the court should consider the affidavits as accurate. According to respondents, the affidavits showed it was decedent's intent for Baker to use money from the joint account to purchase the home in his own name as decedent's gift to him. They also noted Baker spent money and time with his father renovating the home after he purchased it. Respondents argued the affidavits showed this was not just an attempt by decedent to keep the assets out of the divorce proceedings.

¶ 14 Petitioners responded that respondents' motion for summary judgment did not address the allegations in the first amended petition for the issuance of citations to recover assets filed on March 13, 2018, but was instead focused on the allegations in the original petition to discover assets. Petitioners argued the evidence they would present at trial would show decedent lacked the present donative intent to gift $100,000 to Baker when she deposited the money in the joint account.

¶ 15 After hearing arguments, the trial court granted respondents' motion for summary judgment and authorized the funds from the sale of the home to be released to Baker. The court noted the issue was whether decedent had present donative intent when she created the joint account with Baker. The creation of the joint account created a presumption the estate had to overcome by clear and convincing evidence. The court noted it understood "the efforts and the

- 5 -

arguments made by the estate that there's some suggestion that they may be able to present some evidence that possibly later the decedent may have believed she was tricked or didn't have the capacity." However, the court stated nothing suggested anyone took any action regarding her capacity to create the account prior to her death. According to the court:

> "I am not convinced at all that the estate would be able to come close to clear and convincing evidence that this decedent did not have that donative intent based on the facts that the court has before it. I mean there may be some evidence but I don't believe it's such that would create clear and convincing evidence that that intent was not there by the decedent when the account was created."

¶ 16       On July 2, 2018, the trial court entered its written order for summary judgment, and made the order immediately appealable pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), stating "[t]here is no just cause for delaying either enforcement or appeal or both of this order."

¶ 17       That same day, petitioners filed a motion to reconsider the summary judgment order. However, according to a docket entry dated August 22, 2018, the estate later withdrew its motion to reconsider. Petitioners did not appeal the trial court's order granting respondents' motion for summary judgment. Instead, on August 22, 2018, petitioners filed a petition for relief from judgment pursuant to section 2-1401 of the Procedure Code (735 ILCS 5/2-1401 (West 2018)). The petition included information about decedent's mental health when she and Baker opened the joint account and she deposited the $100,000 she received as a result of the motorcycle accident. The petition also included information about decedent's mental health when she told Baker he should take $50,000 out of the joint account and buy the house located at 205 North Alexander Street in Clinton as her gift to him.

¶ 18        According to the petition, decedent's father noted she was incoherent when he spoke to her on June 4, 2016.  On June 6, 2016, Green accompanied decedent to the emergency room because decedent was confused.  The emergency room summary report indicated decedent complained she was forgetting words and having a "hard time processing," presumably her thoughts.  According to the medical record, this had been going on for a week.  This would have been the same week decedent deposited $100,000 in the joint account and told Baker to buy the property in Clinton as her gift to him.  Petitioners alleged Green knew decedent was confused and not sober on June 4, 2016, when she allegedly gifted the money for the property to Baker.  They also alleged Baker knew decedent had not intended to either gift the insurance money or the property to him.

¶ 19        The petition also pointed to decedent's text messages to her father and Megan Fouch and decedent's social media posts as evidence she intended to use the insurance money to buy herself a house and car and had no intention to gift Baker the money or property.  On August 11, decedent told her father she wanted him to take control of her finances.  On August 14, 2016, decedent posted on social media, "I have peope [*sic*] get great people are hard to find thank God I have mine.  And my eyes are open to the real.. [*sic*] and I finly [*sic*] see the others for what they are.  I'm done being nice.. [*sic*] I'm off the pills hahaahah [*sic*].  I'm back[.]  [T]his is gonna [*sic*] be good. Love."  Responding to a comment on her August 14, 2016, post, decedent told her sister that decedent's mother had been "pulling shit."  On August 24, 2016, decedent sent a text message stating, "And Josh isn't putting any money on my card and I'm done so done it's my money and I don't care anymore[.] *** But shits about to get real.  It's my money and I'm done playing games. *** I have never been good at being told what to do[.] *** [A]nd can't just keep my money because they don't like it[.]"  The petition also noted Baker referred to decedent's

insurance proceeds as "her" money in a text message on June 26, 2016.

¶ 20　　　　In addition, the petition also alleged the following: (1) respondents perpetrated a fraud on the trial court through their respective affidavits dated March 21, 2018, by representing that decedent gifted the insurance proceeds to Baker; (2) petitioners had a meritorious defense; (3) and petitioners exercised due diligence in seeking relief via the petition for relief from judgment. The petition asked the court to vacate its summary judgment order and award petitioners other relief.

¶ 21　　　　On September 12, 2018, respondents filed a motion to dismiss the petition for relief from judgment, claiming it failed to set forth specific facts to show petitioners exercised due diligence in presenting the claims raised in the petition in the original action. According to respondents, petitioners likely were aware of the facts alleged for the first time in the petition for relief from judgment—or should have discovered these facts—prior to the trial court granting respondents' motion for summary judgment. As for the estate's allegation of fraud, respondents argued mere silence does not amount to fraudulent conduct and petitioners could not show respondents' alleged conduct deprived petitioners an opportunity to present their claim.

¶ 22　　　　On November 5, 2018, the trial court held a hearing on respondents' motion to dismiss the petition for relief from judgment. The court noted no evidence had been presented to suggest what respondents stated in their respective affidavits did not happen. According to the court:

>　　　　"I can't find that the pleadings, the facts and the pleadings in themselves
>　　　　give rise to a finding of fraud. I can see where someone could suggest, well, it
>　　　　gives rise to someone suspecting that there was a fraud committed; but these facts
>　　　　alone do not show as a matter of fact that a fraud was committed upon the court or

that the party knew she lacked the mental capacity or that she did, in fact, lack the mental capacity at the time that the actions that she took were done."

With regard to the due diligence requirement, the court noted the new information included in the petition for relief from judgment would have been readily accessible or at least should have been known to the parties when the motion for summary judgment was argued. As a result, the court dismissed the petition for relief from judgment.

¶ 23   On January 23, 2019, the trial court denied petitioners' motion to reconsider the dismissal of their petition for relief from judgment.

¶ 24   This appeal followed.

¶ 25                    II. ANALYSIS

¶ 26              A. Petition for Relief from Judgment

¶ 27   The trial court's decision to grant the motion for summary judgment is not at issue in this appeal. Instead, we are reviewing the court's dismissal of the petition for relief from judgment. To state a claim for relief from judgment pursuant to section 2-1401 of the Procedure Code (735 ILCS 5/2-1401 (West 2018)), petitioners must set forth specific factual allegations supporting these three elements:  (1) the existence of a meritorious defense or claim; (2) due diligence in presenting this defense or claim to the circuit court in the original action; and (3) due diligence in filing the section 2-1401 petition for relief. *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 220-21, 499 N.E.2d 1381, 1386 (1986).

¶ 28   "Where a section 2-1401 petition fails to state a cause of action or shows on its face that the petitioner is not entitled to relief, the petition is subject to a motion to dismiss." *In re Marriage of Buck*, 318 Ill. App. 3d 489, 493, 742 N.E.2d 378, 381 (2000). We apply a *de novo* standard of review when reviewing the dismissal of a petition for relief from judgment

and may affirm the dismissal based on any reason found in the record. *Buck*, 318 Ill. App. 3d at 493, 497, 742 N.E.2d at 382, 384. "[T]o set aside a judgment based on newly discovered evidence, it is settled that the evidence must be such as could not reasonably have been discovered at the time of or prior to the entry of the judgment." *Buck*, 318 Ill. App. 3d at 493, 742 N.E.2d at 382.

¶ 29　　　　On appeal, petitioners argue they presented facts showing the existence of a meritorious claim for relief based on decedent's medical records, text messages, and social media posts, as well as text messages between Baker and decedent's father. Petitioners contend this evidence shows decedent did not have the legal capacity to (1) open a joint account with Baker, (2) deposit $100,000 into the joint account, and (3) tell Baker to purchase real property with money she deposited in the joint account as her gift to him. Further, according to petitioners, decedent did not intend to gift $100,000 to Baker by depositing the money into the joint account, and Baker understood the $100,000 was decedent's money even though it was deposited in the joint account. Finally, petitioners argued respondents committed a fraud upon the court by making misrepresentations with regard to what decedent intended to do with the $100,000 in insurance money.

¶ 30　　　　We need not determine whether petitioners have a meritorious claim based on the information presented in their petition for relief from judgment because petitioners failed to allege sufficient facts showing they exercised due diligence in the trial court prior to the court granting respondents' motion for summary judgment. The due diligence requirement denies a petitioner the opportunity to do something which should have been done at the earlier proceeding. *Petrauskas v. Motejunas*, 133 Ill. App. 2d 293, 296, 272 N.E.2d 805, 808 (1971). The petition for relief from judgment did not allege any facts explaining why petitioners could

not have obtained decedent's medical records, text messages, and social media posts or Baker's communications regarding the money prior to the trial court granting respondents' motion for summary judgment.

¶ 31    Citing *Goncaves v. Saab*, 184 Ill. App. 3d 952, 956, 538 N.E.2d 142, 145 (1989), petitioners argue the due diligence requirement should not be rigidly enforced because respondents' respective sworn affidavits were fraudulent. According to their brief:

> "The facts show that [respondents] willfully and purposely lied in their
> affidavits, dated March[] 2018. [Respondents] perpetrated a fraud upon the
> [c]ourt when they falsely swore that decedent had gifted her estate to Baker. The
> requirement of diligence should not be rigidly enforced here, as actual fraud or
> unconscionable conduct has played a part in the rendering of the judgment from
> which relief is sought. Petitioner should not be denied the possibility of relief for
> failing to anticipate respondents' perjurious affidavits. Doing so would
> effectively reward respondents for their dishonest and unconscionable conduct."

¶ 32    We first note neither of respondent's respective affidavits state decedent gifted her estate to Baker. Baker's affidavit stated he and decedent opened a joint account together at PNC Bank in Bloomington, decedent deposited her $100,000 insurance check in the account, and decedent asked Baker to purchase property located at 205 North Alexander Street in Clinton as her gift to him. Green's affidavit simply stated decedent asked Baker on June 4, 2016, to purchase the aforementioned property as her gift to him. Respondents made no representations in their respective affidavits with regard to decedent's mental condition when she opened the joint account or when she told Baker she wanted him to buy the property as her gift to him. Petitioners made no allegations in their petition for relief from judgment that any statement made

- 11 -

in these affidavits was factually inaccurate.

¶ 33    Once petitioners knew decedent (1) had placed the $100,000 in insurance proceeds into a joint account with Baker and (2) also told Baker to buy property in his name alone as her gift to him, they should have been on notice they would have to overcome the presumption decedent intended to gift this money to Baker. The time to present evidence regarding decedent's mental capacity to make these gifts at the expense of her surviving spouse and children would have been prior to the trial court granting respondents' motion for summary judgment.

¶ 34                        B. Motions for Sanctions

¶ 35    On July 16, 2019, Baker filed a motion for sanctions against petitioners, arguing they filed a frivolous appeal. While petitioners failed to prevail on appeal, the appeal was not frivolous considering the unique facts in this case. As a result, we deny Baker's motion for sanctions.

¶ 36    On July 24, 2019, petitioners filed a motion for sanctions against Baker because Baker's brief stated decedent's medical records "were presumably already in the possession of petitioner as a subpoena was issued to Carle Foundation Hospital on July 25, 2017." Baker made the statement in his brief while arguing petitioners failed to exercise due diligence in presenting their claim decedent lacked legal capacity when she opened the joint account and gifted the property to Baker. Petitioners argue this was a "fallacious and misleading" argument because the subpoena at issue was only for financial records (medical payments). Baker responded the subpoena's language was ambiguous, he was never provided with a copy of any records petitioners received pursuant to the subpoena, and he was not certain what records had been provided to petitioners, which is why he said "presumably." This is a reasonable explanation for

the statement at issue.  Petitioners' motion for sanctions is meritless, and it is also denied.

¶ 37                                 III. CONCLUSION

¶ 38           For the reasons stated, we affirm the trial court's order dismissing petitioners'

petition for relief from judgment pursuant to section 2-1401 of the Procedure Code (735 ILCS

5/2-1401 (West 2018)).

¶ 39           Affirmed.